Judge Pauley

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

07 CIV 9693

------------------------------------x

AURIGA LABORATORIES, INC.,

    Plaintiff,

- against -

LABORATOIRES CARILÈNE S.A.S.,

    Defendant.

------------------------------------x

No. ___ Civ. ___

COMPLAINT

RECEIVED OCT 31 2007 U.S.D.C. S.D.N.Y. CASHIERS

**JURY TRIAL DEMANDED**

    Plaintiff, by its undersigned attorneys, as and for its complaint herein against defendant, alleges as follows:

## PARTIES

    1.    Plaintiff AURIGA LABORATORIES, INC. ("Auriga") is a corporation duly organized and existing under the laws of Delaware, having a place of business at 5555 Triangle Parkway, Norcross, Georgia.

    2.    Defendant LABORATOIRES CARILÈNE S.A.S. ("Carilène") is a corporation existing under the laws of France, having a place of business at 7 rue du Chant des Oiseaux, 78360 Montesson, France.

## JURISDICTION AND VENUE

    3.    The Court has diversity jurisdiction over the subject matter of this action by virtue of 28 U.S.C. §§ 1332(a) and (c), in that Auriga is a citizen of a State and Carilène is a citizen of a foreign state, and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

4. The Court has personal jurisdiction over defendant Carilène because Carilène: (a) transacts business in the State of New York; and (b) has entered into an agreement with Auriga described hereinafter, which is expressly governed by the laws of the State of New York, and whereby Carilène expressly submits itself to the jurisdiction of this Court for adjudication of any litigation arising under the agreement.

5. Venue is proper in this Court by virtue of 28 U.S.C. §§ 1391(a) and (c), and because Carilène has entered into an agreement with Auriga described hereinafter, whereby Carilène expressly submits itself to the jurisdiction of this Court for adjudication of any litigation arising under the agreement.

## NATURE OF THE ACTION

6. This action arises from Carilène's material breach and anticipatory repudiation of a license and supply agreement for a unique product used to treat dry mouth syndrome.

## FACTS COMMON TO ALL CLAIMS

**A.   The Product and the Agreement**

7. Auriga is a company with expertise in developing, advertising, promoting, and marketing specialty pharmaceutical products.

8. On or about September 13, 2006, Auriga and Carilène entered into a written License and Supply Agreement ("the Agreement"), whereby Carilène agrees to supply to Auriga a novel and unique product used to treat dry mouth ("the Product"), and Auriga agrees to take an exclusive license from Carilène to promote, market and sell the Product in the United States.

9. The Product is a rehydration solution delivered in a pump spray that treats xerostomia (dry mouth caused by lack of sufficient saliva). Dry mouth can be caused by medical

conditions such as diabetes, hypertension and rheumatoid arthritis.

10.     Carilène has applied for a U.S. patent for the Product (Application Serial No. 10/538,835 ("the '835 application")), entitled "Oil Composition Based on Peroxidised Lipids, Which Can Be Used in the Treatment of Xerostomia," which was filed on December 22, 2003 and published on April 13, 2006.  Once the '835 patent application matures into an issued patent, the patent will not expire until December 22, 2023.  The term of the Agreement extends from the date it was executed to the expiration date of the patent.

11.     Under the Agreement, Carilène grants an exclusive license to Auriga to promote, market and sell the Product in the U.S., in exchange for Auriga's commercially reasonable efforts to promote, market and sell the Product, and Auriga's payment to Carilène of certain scheduled license payments and a royalty on net sales.

**B.     Carilène's Actionable Conduct**

12.     Pursuant to the Agreement, Auriga has taken commercially reasonable steps to commence promotion, marketing, distribution and sale of the Product under the brand name AQUORAL.  However, Carilène has frustrated Auriga's efforts, and Auriga's commercial launch of the Product, in the following ways.

13.     The Agreement obligates Carilène to supply the Product to Auriga in sufficient quantities and in sufficient lead times to allow Auriga to commercially launch the Product.  In this regard, the Agreement obligates Carilène to deliver Auriga's first order for the Product within 12 weeks after Auriga places the order.

14.     Despite the foregoing, Carilène did not deliver Auriga's first order for the Product until 20 weeks after the order was placed.  This eight (8) -week delay significantly impaired Auriga's ability to commercially launch the Product.

15. Carilène further impeded a commercial launch of the Product by failing to deliver commercially viable samples of the Product to Auriga, contrary to Carilene's agreement to do so.

16. The Agreement provides that the minimum batch size of the Product is 100,000 units, deliverable in two separate shipments on two separate dates within any twelve-month period. Auriga placed its initial order for a delivery of 50,000 units. Nonetheless, Carilène told Auriga that would only fill orders for a minimum of 100,000 units, forcing Auriga to purchase a 50% larger initial quantity and to divert financial resources from other activities associated with the commercial launch.

17. On October 16, 2007, Auriga provided Carilène written notice that Carilène's aforesaid actions or omissions constitute material breaches of the Agreement. This notice was sent in response to a September 25, 1997 letter from Carilène contending that Auriga had not yet made a license or royalty payment.

18. In response, Carilène sent a letter to Auriga dated October 19, 2007 that purported to expressly terminate the Agreement, effective immediately.

19. In a letter dated October 22, 2007, Auriga proposed that the parties have substantive discussions to resolve all issues. Carilène declined this proposal.

20. As of the date of this Complaint, Auriga has substantially performed its obligations under the Agreement.

**FIRST CLAIM FOR RELIEF**

**Anticipatory Repudiation of Contract**

21. Auriga repeats and realleges paragraphs 1 through 20, as though fully alleged herein.

22. The Agreement between Auriga and Carilène is a valid and enforceable contract.

23. Carilène's unilateral attempted termination of the Agreement constitutes anticipatory repudiation of the Agreement before the conclusion of its term, in violation of the common law of the State of New York.

24. Auriga is ready, willing, and able to continue performance of its obligations under the Agreement to the conclusion of the term.

25. By virtue of and as a result of Carilène's anticipatory repudiation of the Agreement, Auriga has been and is deprived of the benefits afforded to Auriga by the Agreement.

26. The benefits of the Agreement to Auriga are irreplaceable, in that the Product is a novel and unique pharmaceutical formulation (according to Carilène's own statements to the United States Patent Office in the '835 application), that Auriga can not obtain from any other source.

27. By virtue of and as a result of Carilène's anticipatory repudiation of the Agreement, Auriga has suffered incalculable and irreparable harm, and incurred substantial financial damages.

## SECOND CLAIM FOR RELIEF

### Breach of Contract

28. Auriga repeats and realleges paragraphs 1 through 20, as though fully alleged herein.

29. The Agreement between Auriga and Carilène is a valid and enforceable contract.

30. Auriga has fully performed its obligations provided by the Agreement.

31. Auriga did not excuse Carilène from its performance obligations imposed by the Agreement, and Carilène is not otherwise excused from its obligations.

32.     Carilène has failed to perform its obligations under the Agreement, and has materially breached the Agreement under the common law of New York, by its aforesaid acts or omissions.

33.     By virtue of and as a result of Carilène's material breaches of the Agreement, Auriga has suffered substantial past and present damages, including consequential damages, in the sum and amount of at least $75,000, and will suffer substantial damages during the balance of the term of the Agreement, including consequential damages, in an amount to be proved at trial.

34.     The past, present, and future damages suffered by Auriga by virtue of Carilène's material breaches of the Agreement, including consequential damages, were foreseeable by Carilène at the time the Agreement was breached.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff Auriga prays for relief, as follows:

1.     On the first claim for relief, a judgment enjoining defendant Carilène to specifically perform its obligations under the Agreement to the conclusion of its term (i.e., December 22, 2023, the date of expiration of the patent issuing from the '835 application), pursuant to, among other authorities, NY CLS UCC § 2-716; or, in the alternative, a judgment for money damages for total breach of the Agreement up to said patent expiration date, according to proof at trial.

2.     On the second claim for relief, a judgment against defendant Carilène for money damages in the sum and amount of at least $75,000 plus interest and future lost revenues, according to proof at trial.

3.     A judgment awarding Auriga its costs and disbursements associated with this action, including its reasonable attorneys' fees.

4.   A judgment awarding such other and further relief as the Court deems just and proper.

## JURY DEMAND

Trial by jury is demanded by plaintiff on all issues so triable.

October 31, 2007

Respectfully submitted,

FROMMER LAWRENCE & HAUG LLP

By _____
Charles J. Raubicheck (CR 5058)
David A. Zwally (DZ 2662)
745 Fifth Avenue
New York, New York 10151
(212) 588-0800

*Attorneys for Plaintiff*
*Auriga Laboratories, Inc.*